UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

MATTHEW WRIGHT,

                                   Plaintiff,          **COMPLAINT**

            -against-

CITY OF NEW YORK, POLICE OFFICER ELISHA     16 Civ. 1397
DUNCAN, and JOHN/JANE DOE # 1 - 10,

                              **JURY TRIAL DEMANDED**

                        Defendants.
------------------------------------------------------------------------x

        Plaintiff Matthew Wright, by his attorneys, Law Office of Gregory P. Mouton, Jr., LLC, respectfully alleges:

## NATURE OF THE ACTION

        1.      This is an action to recover money damages arising out of the violation of Mr. Wright's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

        2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

        3.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

        4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## JURY DEMAND

        5.      Mr. Wright demands a trial by jury in this action.

## PARTIES

        6.      Plaintiff Matthew Wright is a resident of the County of Bronx, State of New York.

7.     Defendant City of New York is a municipal organization organized under the laws of the State of New York.

8.     Defendant City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant City of New York.

9.     The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10.     At all times relevant herein, Defendant Elisha Duncan was an officer, employee, and/or agent of Defendant City of New York.

11.     At all times relevant herein, Defendant Duncan was acting within the scope of his employment with Defendant City of New York.

12.     At all times relevant herein, Defendant Duncan was acting under color of state law.

13.     Defendant Duncan is sued in Its individual and official capacities.

14.     At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were supervisors, officers, employees, and/or agents of Defendant City of New York.

15.     At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were acting within the scope of their employment with Defendant City of New York.

16.     At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were acting under color of state law.

17.     Defendants John/Jane Doe # 1 - 10 are sued in their individual and official capacities.

18.     The names John/Jane Doe # 1 - 10 are fictitious, their true names being unknown to Mr. Wright at this time.

## STATEMENT OF FACTS

19.     On June 20, 2014, Mr. Wright was lawfully walking at or near 344 East 176th Street, Bronx, New York ("Subject Location").

20.     Mr. Wright was approached and stopped by the individual defendants.

21.     The individual defendants, and, specifically, Defendant Duncan, accused Mr. Wright of having "dope".

22.     Defendant Duncan stated that he saw Mr. Wright throw the dope, which was wrapped in toilet paper, on the ground.

23.     Mr. Wright denied that he had ever had any dope.

24.     Defendant Duncan told Mr. Wright that he knew that he was the one who had the dope and called for backup.

25.     Defendant Duncan told Mr. Wright that he was under arrest, and placed Mr. Wright in handcuffs and searched him.

26.     In the process of placing Mr. Wright in the handcuffs, Defendant Duncan placed the cuffs on excessively tight.

27.     Mr. Wright begged Defendant Duncan to loosen the cuffs as they were causing him pain, but Defendant Duncan refused to.

28.     Mr. Wright's arrest was without probable cause.

29.     Mr. Wright's arrest was approved at the Subject Location by Defendant John/Jane Doe # 1.

30.     During that time, backup began to arrive.

31.     One particular officer, who appeared to be a Caucasian officer, rushed up and tackled Mr. Wright as he was standing handcuffed with Defendant Duncan.

32.     As a result of being tackled, Mr. Wright hit his left shoulder on the side-view mirror of a nearby vehicle.

33.     The force used by the officer caused cuts and bruising to Mr. Wright's left shoulder, and pain to Mr. Wright's left leg.

34.     None of the officers at the location, including Defendant Duncan, prevented the officer from tackling Mr. Wright, although they observed the officer running toward Mr. Wright.

35.     Ten minutes after being arrested, Mr. Wright was thrown into a police van and transported to the 46th Precinct.

36.     At some point prior to being placed in the van, Mr. Wright was searched.

37.     When he was placed into the van, and during the ride to the 46th Precinct, Mr. Wright pleaded with the individual defendants to loosen his handcuffs, but they refused.

38.     Upon entering the precinct, Mr. Wright was strip and body cavity searched by the individual defendants under the direction and approval of a supervising officer.

39.     Mr. Wright had no contraband on his person, and Mr. Wright had done nothing to give the individual defendants reasonable suspicion or probable cause to conduct the strip and body cavity searches.

40.     The individual defendants spoke with the Bronx County District Attorneys' Office, individually and collectively lying to the Bronx County District Attorney's Office that Mr. Wright had violated New York Penal Law §§ 220.16, 220.03, and 205.30.

41.     This common practice at the NYPD, which involves planting and attributing illegal drugs and contraband to a person to ensure that charges stick, is known as "flaking".

42.     As set forth herein, this practice of "flaking" disproportionately affects ethnic minorities, including Mr. Wright, under engrained NYPD discriminatory policies, practices, and procedures.

43.     The individual defendants lied further, alleging that Mr. Wright had been stopped at 1920 Anthony Avenue, Bronx, New York.

44.     Based on these fabricated allegations, the Bronx County District Attorney's Office forwarded to Defendant John/Jane Doe # 2 a Criminal Court Complaint.

45.     The Criminal Court Complaint was reviewed and then signed by Defendant John/Jane Doe # 2.

46.     When reviewing and signing the Criminal Court Complaint, Defendant John/Jane Doe # 2 knew the allegations contained therein to be false.

47.     The executed Criminal Court Complaint was then forwarded by Defendant John/Jane Doe # 2 to the Bronx County District Attorney's Office.

48.     Legal process was issued against Mr. Wright, and Mr. Wright was subsequently arraigned.

49.     The charges against Mr. Wright were dismissed on March 9, 2015, on motion of the Bronx County District Attorney's Office.

50.     During the pendency of the criminal proceeding, the individual defendants forwarded false evidence to the Bronx County District Attorney's Office, *inter alia*, arrest reports, complaint reports, evidence vouchers, memobook entries, and property vouchers.

51.     Mr. Wright suffered damage as a result of Defendants' actions.  Mr. Wright was, *inter alia*, deprived of liberty and suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1983*

52.     Mr. Wright repeats and realleges each and every allegation as if fully set forth herein.

53.     Defendants, by their conduct toward Mr. Wright as alleged herein, violated Mr. Wright's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

54.     As a direct and proximate result of this unlawful conduct, Mr. Wright sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
*Unlawful Stop and Search*

55.     Mr. Wright repeats and realleges each and every allegation as if fully set forth herein.

56.     The individual defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Mr. Wright without reasonable suspicion.

57.     As a direct and proximate result of this unlawful conduct, Mr. Wright sustained the damages alleged herein.

### THIRD CAUSE OF ACTION
*False Arrest*

58.     Mr. Wright repeats and realleges each and every allegation as if fully set forth herein.

59.     The individual defendants violated the Fourth and Fourteenth Amendments because they arrested Mr. Wright without probable cause.

60.     As a direct and proximate result of this unlawful conduct, Mr. Wright sustained the damages alleged herein.

### FOURTH CAUSE OF ACTION
*Excessive Force*

61.     Mr. Wright repeats and realleges each and every allegation as if fully set forth herein.

62.     The individual defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force on Mr. Wright.

63.     As a direct and proximate result of this unlawful conduct, Mr. Wright sustained the damages alleged herein.

### FIFTH CAUSE OF ACTION
*Denial of Substantive Due Process*

64.     Mr. Wright repeats and realleges each and every allegation as if fully set forth herein.

65.     The individual defendants created false evidence against Mr. Wright.

66.     The individual defendants forwarded false evidence, *inter alia*, arrest reports, complaint reports, evidence vouchers, memobook entries, laboratory reports, drug testing reports, and property vouchers, to prosecutors in the Bronx County District Attorney's Office.

67.     In creating false evidence against Mr. Wright, and in forwarding false evidence to prosecutors, the individual defendants violated Mr. Wright's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

68.     As a direct and proximate result of this unlawful conduct, Mr. Wright sustained the damages alleged herein.

SIXTH CAUSE OF ACTION<br>*Malicious Abuse of Process*

69.     Mr. Wright repeats and realleges each and every allegation as if fully set forth herein.

70.     The individual defendants issued and/or caused to be issued legal process to place Mr. Wright under arrest.

71.     The individual defendants arrested Mr. Wright in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to cover up their unlawful stop and search of Mr. Wright; to protect their own financial interests in overtime pay; to fulfill quotas set by Defendant City of New York and the NYPD; and to increase their productivity ratings.

72.     The individual defendants pursued these collateral objectives after issuance of legal process by, *inter alia*, forwarding false evidence to the Bronx County District Attorney's Office and continuing to participate in the prosecution of Mr. Wright.

73.     The individual defendants acted with intent to do harm to Mr. Wright without excuse or justification.

74.     As a direct and proximate result of this unlawful conduct, Mr. Wright sustained the damages alleged herein.

## SEVENTH CAUSE OF ACTION
*Malicious Prosecution*

75.     Mr. Wright repeats and realleges each and every allegation as if fully set forth herein.

76.     The individual defendants initiated the criminal proceedings against Mr. Wright by issuing and/or causing to be issued legal process against Mr. Wright.

77.     The individual defendants lacked probable cause to commence the criminal proceedings against Mr. Wright.

78.     The individual defendants' actions were motivated by actual malice.

79.     The criminal proceedings were terminated in favor of Mr. Wright.

80.     As a direct and proximate result of this unlawful conduct, Mr. Wright sustained the damages alleged herein.

## EIGHTH CAUSE OF ACTION
*Failure to Intervene*

81.     Mr. Wright repeats and realleges each and every allegation as if fully set forth herein.

82.     Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

83.     Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

84.     As a direct and proximate result of this unlawful conduct, Mr. Wright sustained the damages alleged herein.

## NINTH CAUSE OF ACTION
*Monell*

85.     Mr. Wright repeats and realleges each and every allegation as if fully set forth herein.

86.     This is not an isolated incident.  Defendant City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Wright.

87.     Defendant City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

88.     Defendant Police Officer Elisha Duncan has, himself, been sued approximately eight times since 2008 for violations of various persons' constitutional rights, and has a known history of financial problems which caused him to falsely arrest people in order to gain overtime compensation; was known to the NYPD and Defendant City of New York; and even led him to steal approximately $40,000.00 from his fellow police officers.

89.     Defendant City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

90.     Defendant City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

91.     Defendant City of New York, through the NYPD, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

92.     This quota policy requires that police officers, including the individual defendants named herein, make a certain number of arrests and/or write a certain number of summonses and desk appearance tickets within an allocated time period.

93.     Officers that meet the required number of arrests, summonses, and desk appearance tickets are classified as active officers.

94.     Officers that do not meet the required number of arrests, summonses, and desk appearance tickets are classified as inactive officers.

95.     Active officers are given promotion opportunities that are not afforded to inactive officers.

96.     Active officers are given overtime opportunities, such as security at parades, etc., that are not afforded to inactive officers.

97.     The quota policy does not differentiate between arrests, summonses, and desk appearance that are supported by probable cause and ones that are not.

98.     Defendant City of New York, through the NYPD, does nothing to ensure that officers, in trying to fulfill this quota policy, are making arrests and issuing summonses and desk appearance tickets lawfully.  There are no post-arrest investigations that are performed, and no

policies in place that would prevent abuse of this policy, such as is demonstrated in the instant case.

99.     Defendant City of New York, through the NYPD, does nothing to determine the outcome of the charges levied against arrestees in order to proper counsel officers as to the lawfulness of their arrests/issuance of summonses and desk appearance tickets.

100.    The failure of Defendant City of New York to, *inter alia*, take these steps encourages, *inter alia*, unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury, in that the quota policy provides, *inter alia*, career and monetary incentives to officers, including the individual defendants herein.

101.    Defendant City of New York, through the NYPD, has a *de facto* overtime policy that encourages and incentivizes unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

102.    Defendant City of New York, through the NYPD, provides officers, including the individual defendants herein, with overtime opportunities when arrest are made, or summonses and desk appearance tickets are issued.

103.    Upon making an arrest or issuing summons or desk appearance ticket, an arresting officer submits a request for overtime to his commanding officer.

104.    These requests are essentially rubberstamped, with commanding officers performing no investigation into the circumstances of the arrest.

105.    Defendant City of New York, through the NYPD, does not perform any post-arrest investigation and there are no policies in place to prevent abuse of this overtime policy.

106.    As a result of this overtime policy, officers, including the individual officers named herein, abuse this overtime policy, making baseless arrests and wrongfully issuing summonses and desk appearance tickets to substantially supplement their income through overtime pay.

107.    As noted above, "flaking" is the practice by narcotics officers of planting drugs on or near targeted and innocent individuals, and then doctoring NYPD and legal paperwork to ensure that the charges stick.

108.    This practice of flaking is used to ensure that quota and productivity goals are met by NYPD officers so that they may enjoy, among other things, financial and promotional opportunities within the NYPD.

109.    This practice is widespread within the NYPD.  So much so that, at the trial of Jason Arbeeny, an NYPD veteran convicted of flaking in order to meet quotas, Supreme Court Justice Gustin Reichbach stated, "Having been a judge for 20 years, I thought I was not naïve regarding the reality of narcotics enforcement.  But even the Court was shocked, not only by the seeming pervasive scope of the misconduct, but even more distressingly by the seeming casualness by which such conduct is employed."

110.    At this same trial, Stephen Anderson, a former detective with the NYPD, testified that "flaking" is common within the NYPD, including among supervisors, detectives, and police officers.

111.    Mr. Anderson further stated that members of the NYPD pursued this practice to meet quotas, reasoning that arrestees "would be out of jail tomorrow anyway."

112.    The creation of this false evidence was also found by a jury in the matter *Kwame Garnett v. Undercover Officer C0039, et al.*, 13 Civ. 7083 (GHW), United States District Court,

Southern District of New York.  There, the jury found that the undercover officer had fabricate evidence to implicate the plaintiff in a drug sale.

113.    Furthermore, the discriminatory pattern and practices by the NYPD, as well as the flaking, as set forth above, has furthered the quota and overtime policies of the NYPD.

114.    Members of the NYPD are able to meet their quotas by preying on ethnic minorities, including Mr. Wright.

115.    By targeting these populations with impunity, members of the NYPD meet their quotas and also obtain guaranteed overtime pay as set forth above.

116.    As such, Defendant City of New York actually rewards discriminatory and illegal by members of the NYPD behavior by providing guaranteed overtime to these officers without any oversight or limitations.

117.    These policies, practices, and customs were the moving force behind Mr. Wright injuries.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Mr. Wright respectfully requests judgment against Defendants as follows:

(a)     Compensatory damages against all defendants, jointly and severally;

(b)     Punitive damages against the individual defendants, jointly and severally;

(c)     Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d)     Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       February 21, 2016

                    By:    /s/
                           Gregory P. Mouton, Jr., Esq.

Law Office of Gregory P. Mouton, Jr., LLC
*Attorneys for Plaintiff Matthew Wright*
305 Broadway, 14th Floor
New York, NY  10007
Phone & Fax: (646) 706-7481

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW WRIGHT,

Plaintiff,

-against-

CITY OF NEW YORK, POLICE OFFICER ELISHA DUNCAN, and JOHN/JANE DOE # 1 - 10,

Defendants.

COMPLAINT



**LAW OFFICE OF GREGORY P. MOUTON, JR., LLC**
Gregory P. Mouton, Jr., Esq., *Principal*
305 Broadway, 14th Floor
New York, NY  10007
Phone & Fax: (646) 706-7481