UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

MATTHEW WRIGHT,

                          Plaintiff,              16 Civ. 1397

        -against-                                 OPINION

CITY OF NEW YORK, POLICE OFFICER
ELISHA DUNCAN, POLICE OFFICER
JOHN RUDDEN, SERGEANT TERESA SADLIER,
POLICE OFFICER BRIAN O'KEEFE, POLICE
OFFICER DANIEL CASTRO, and
JOHN/JANE DOE #1-5,

                          Defendants.

------------------------------------------X

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:                      │
│ DATE FILED: 10-23-17        │
└─────────────────────────────┘
```

A P P E A R A N C E S:

        Attorney for Plaintiff

        MOUTONDELL'ANNO LLP
        305 Broadway, 7th Floor
        New York, NY 10007
        By:  Gregory P. Mouton, Jr., Esq.


        Attorney for Defendants

        ZACHARY W. CARTER
        Corporation Counsel of the City of New York
        100 Church Street
        New York, NY 10007
        By:  Colin McCann Ceriello, Esq.

**Sweet, D.J.**

Plaintiff Matthew Wright ("Wright" or the "Plaintiff") has moved pursuant to Fed. R. Civ. P. Rule 54(d)(2) seeking attorneys' fees of $43,363 and costs and disbursements in this action alleging civil rights violations against the City of New York (the "City") and five named and individual Police Officers (collectively, the "Defendants"). Based on the facts and conclusions set forth below, the motion is granted, and attorneys' fees, costs and disbursements are awarded as set forth below.

As the history of this case demonstrates and the realities establish, this action concerns attorneys' fees more than the violation of Wright's civil rights. The Defendants have opposed the motion on two grounds, that the requested attorneys' fees are unreasonable and that the retainer agreement (the "Retainer Agreement" or the "Agreement") between Wright and his attorney Gregory P. Moulton, Jr., Esq. ("Counsel") constitutes a conflict of interest between the Plaintiff and his counsel.

1

## I. Prior Proceedings

Wright commenced this action on February 23, 2016 asserting federal civil rights violations stemming from an arrest that occurred on June 20, 2014 after Police Officer Duncan allegedly observed the Plaintiff in possession of "dope." The Amended Complaint alleged § 1983 violations, and claims of unlawful search, false arrest, excessive force, denial of substantive due process, malicious abuse of process, malicious prosecution, failure to intervene, and municipal liability.

The action was assigned to participate in the Local Civil Rule 83.10 (the "§ 1983 Plan") and the parties engaged in the "Limited Discovery" as required by Local Rule 83.10(5). In accordance with the § 1983 Plan, the parties also participated in mediation on August 23, 2016. After mediation was unsuccessful, the parties attended an initial conference on September 27, 2016, which set the discovery schedule. Counsel propounded a total of 297 individual further document requests in addition to the limited discovery required by the § 1983 Plan. The Defendants responded to each request and provided the requested documents.

One day after Defendants further supplemented their disclosures, Counsel moved to compel additional documents, and sought sanctions based on Defendants' alleged "fail[ure] to provide a myriad of basic discovery." Defendants cross-moved to compel Plaintiff to provide a global § 160.50 Release. On June 7, 2017, the Court denied the majority of Plaintiff's requests for discovery and for sanctions.

On June 16, 2017, Defendants served Plaintiff with a $5,001 offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. On the same day, Counsel visited the Plaintiff to communicate the offer of judgment, which was accepted and docketed. Following Plaintiff's acceptance of the offer of judgment, the parties began negotiating Plaintiff's reasonable amount of attorneys' fees, costs, and disbursements as provided by 42 U.S.C. § 1988, and agreed to an amount in principle inclusive of fees, costs, and disbursements.

In response to the agreement in principle, the City sent Counsel the document to memorialize the costs and fees agreement. This includes a Stipulation and an Order of Settlement of Attorney's Fees, Costs, and Expenses, two separate releases discharging any further claims for fees by both

Plaintiff and Plaintiff's counsel, and a W-9 Form. Counsel

declined to return as executed the releases requiring his client

to affirm that he had assigned all rights to attorneys' fees to

his counsel and released all Defendants and successors to any

further claims to said fees in the above-referenced matter.

Counsel also provided a redacted Retainer Agreement, which

contains the following relevant language:

> [Matthew Wright] agrees to pay [The Law Office of
> Gregory Mouton, Jr., LLC] a contingent fee of
> one-third of the total recovery . . . plus any
> attorney's fees awarded pursuant to 28 U.S.C. §
> 1988. Client hereby assigns [The Law Office of
> Gregory Mouton, Jr., LLC] all rights and
> interests [Matthew Wright] may have in any claims
> against the defendants for costs, expenses, and
> attorneys' fees.

*See* Retainer Agreement, Defs.' Mot. Ex. 2, at 1, July 27, 2017,

ECF No. 55.


The instant motion was heard and marked fully

submitted on August 30, 2017.


## II.    **The Applicable Standard**


The Civil Rights Attorney's Fees Awards Act of 1976

authorizes district courts to award reasonable attorneys' fees

to prevailing parties in civil rights litigation. *See* 42 U.S.C.

4

§ 1988. "The Second Circuit has held that plaintiffs who accept Rule 68 offers of judgment qualify as 'prevailing parties' entitled to attorneys' fees and costs." *Davis v. City of New York*, No. 10 Civ. 699 (SAS), 2011 WL 4946243, at *2 (S.D.N.Y. Oct. 18, 2011). The Supreme Court has stated that the prevailing party should recover attorneys' fees "unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 (1968)).

A district court traditionally has "considerable" discretion in deciding whether to award fees, *see Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008) (internal citation omitted), but "this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees." *See Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001). Congress intended that fee awards in civil rights cases "be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases." *Blum v. Stenson*, 465 U.S. 886, 893 (1984) (quoting S. Rept. No. 94-1011, p. 6 (1976)).

In regards to determining attorneys' fees, the Second Circuit has maintained that "[t]here is no precise rule or formula for making [fee] determinations." *Husain v. Springer*, 579 F. App'x 3, 6 (2d Cir. 2014) (alteration in original) (citing *Hensley*, 461 U.S. at 436). The calculation of the product of the number of hours expended and a reasonable hourly rate, commonly referred to as the "lodestar method," is the most common analysis for an appropriate award of attorney's fees. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (noting that "the lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence") (internal alterations omitted). Accordingly, the lodestar calculation is presumptively reasonable. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011) ("Both this court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'").

The Second Circuit in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 493 F.3d 110 (2d Cir. 2007) adopted the prevailing model for determining attorney's fees in this Circuit:

> The reasonable hourly rate is the rate a paying
> client would be willing to pay. In determining

what rate a paying client would be willing to
pay, the district court should consider, among
others, the *Johnson* factors[1]; it should also bear
in mind that a reasonable, paying client wishes
to spend the minimum necessary to litigate the
case effectively. The district court should also
consider that such an individual might be able to
negotiate with his or her attorneys, using their
desire to obtain the reputational benefits that
might accrue from being associated with the case.
The district court should then use that
reasonable hourly rate to calculate what can
properly be termed the 'presumptively reasonable
fee.'

*Id.* at 117-18.


"In calculating the number of 'reasonable hours,' the

court looks to 'its own familiarity with the case and its

experience with the case and its experience generally as well as

to the evidentiary submissions and arguments of the parties.'"

*Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992). "The

district court also should exclude from [its] fee calculation

hours that were not 'reasonably expended.' Cases may be

overstaffed, and the skill and experience of lawyers vary

---

[1] The twelve *Johnson* factors are: "(1) the time and labor required; (2) the
novelty and difficulty of the questions; (3) the level of skill required to
perform the legal service properly; (4) the preclusion of employment by the
attorney due to acceptance of the case; (5) the attorney's customary hourly
rate; (6) whether the fee is fixed or contingent; (7) the time limitations
imposed by the client or the circumstances; (8) the amount involved in the
case and the results obtained; (9) the experience, reputation, and ability of
the attorneys; (10) the undesirability of the case; (11) the nature and
length of the professional relationship with the client; and (12) awards in
similar cases." *Id.* at 114, n.3 (citing *Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714, 717-19 (5th Cir. 1974)).

widely. Counsel for the prevailing party should make a good
faith effort to exclude from a fee request hours that are
excessive, redundant, or otherwise unnecessary, just as a lawyer
in private practice ethically is obligated to exclude such hours
from his fee submission." *Hensley*, 461 U.S. at 434 (internal
citations omitted). Though the Court must analyze the fees a
reasonable client would be willing to bear, it need not act as a
reasonable client might by "set[ting] forth item-by-item
findings concerning what may be countless objections to
individual billing items." *Francois v. Mazer*, 523 F. App'x 28,
29 (2d Cir. 2013) (citing *Lunday v. City of Albany*, 42 F.3d 131,
134 (2d Cir. 1994)). "Rather, in dealing with items that are
'excessive, redundant, or otherwise unnecessary, . . . the court
has discretion simply to deduct a reasonable percentage of the
number of hours claimed as a practical means of trimming fat
from a fee application.'" *Id.* (citing *Kirsch v. Fleet Street,
Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). The same principle
applies to calculation of a cost award. *Id.*

# III. **Attorneys' Fees as Modified Are Granted**

Pursuant to § 1988 and the aforementioned authorities, Counsel is entitled to attorneys' fees. Next it is this Court's duty to determine reasonable attorneys' fees, based at least in part on the *Johnson* factors. *See Arbor Hill*, 493 F.3d at 117-18. The City has challenged Counsel's requested rate of $330 an hour and portions of his time records as excessive or inappropriate.

## a. The Appropriate Rate for Counsel in This Action is $300 an Hour

In determining the reasonable hourly rates to be applied, courts look to the market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum*, 465 U.S. at 896, n.11). Further, "[i]t is well-established that the prevailing community a district court should consider . . . is normally the district in which the court sits." *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks omitted).

Courts have reached some consensus about current prevailing rates in federal civil rights cases in the Southern District of New York. "As the Second Circuit has explained, this fact-finding 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" *Schoolcraft v. City of New York*, 248 F. Supp. 3d 506, 510 (S.D.N.Y. 2017); *see also Adorno v. Port Authority of New York & New Jersey*, 685 F. Supp. 2d 507, 513-14 (S.D.N.Y. 2010) (finding that the range of fees in this District for civil rights and employment litigators with approximately ten years of experience is between $250 per hour and $350 per hour); *Wise v. Kelly*, 620 F. Supp. 2d 435, 446-47 (S.D.N.Y. 2008) (collecting cases awarding $230-$430 per hour for civil rights litigators where "[t]he legal community at issue . . . covers small to mid-size firms in civil rights"); *Dancy v. McGinley*, 141 F. Supp. 3d 231, 238 (S.D.N.Y. Sept. 21, 2015) (awarding a civil rights litigator with sixteen years of experience a rate of $400 per hour); *Schoolcraft*, 248 F. Supp. 3d at 509 (awarding a civil rights attorney with twenty-five years of experience an initial rate of $390 per hour, which was subsequently raised to $400 per hour); *Lee v. Santiago*, No. 12 Civ. 2558 (PAE)(DF), 2013 WL 4830951, at *18 (S.D.N.Y. Aug. 15,

2013) (awarding Counsel $300 per hour for work performed in accordance with that civil rights case).

Counsel has practiced for approximately nine years, both as a solo practitioner and as a member of a two-attorney firm, and he has worked on more than 136 civil rights cases. *See* Pl's. Reply Br. 9. Accordingly, the prevailing rate for civil rights attorneys with comparable experience in this community is between $250 and $350 an hour.

However, this Court in its discretion may also take Counsel's sanctionable conduct into consideration. Counsel was sanctioned by Magistrate Judge Lois Bloom in *McCants v. City of New York*, No. 11 CV 3511 (SJ)(LB), at *1 (E.D.N.Y. Feb. 16, 2012) and fined $150 for failing to appear at a court conference. On reconsideration, the Honorable Sterling Johnson, Jr. upheld the sanctions imposed, and noted that "the Court hopes that Mouton does not continue to derogate from the Court's rules" in admonishing Counsel for making frivolous motions. *See id.*, (May 1, 2012) (order to vacate denied), at *7. Moreover, in *Jimenez v. City of New York*, 162 F. Supp. 3d 173, 182 (S.D.N.Y. 2015), the court levied sanctions in the civil rights case in the amount of $19,075 against Counsel for his role in preparing

11

and submitting an affidavit determined by the court to be "very likely perjurious." On appeal, the Second Circuit affirmed the $19,075 imposition of sanctions. See *Jimenez v. City of New York*, 666 Fed. Appx. 39, 41 (2d Cir. 2016). In light of this history of sanctionable conduct, Counsel's hourly rate may be reduced in the Court's discretion.

Counsel contends that the City should be bound to the $330 rate as listed in the putative settlement agreement. Although offers to settle a claim and statements made during settlement negotiations regarding a claim are not admissible to establish "liability for, invalidity of, or amount of" that claim, evidence of settlement negotiations may, in a district court's discretion, be admitted if offered for "another purpose," pursuant to Federal Rule of Evidence 408.[2] *See Starter Corp. v. Converse Inc.*, 170 F.3d 286, 293-94 (2d Cir. 1999) (upholding admission of evidence to prove claims of contractual

---

[2] Rule 408 provides in relevant part:

> Evidence of (1) furnishing . . . or (2) accepting . . . a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is *offered for another purpose* . . .

Fed. R. Evid. 408 (emphasis added).

12

and equitable estoppel based on representations made during settlement negotiations).

Admittedly, courts allow the submission of evidence from settlement negotiations to establish reasonable market rates, including reasonable license rates and royalty rates. *See American Soc. of Composers, Authors and Publishers v. Showtime/The Movie Channel, Inc.*, 912 F.2d 563 (2d Cir. 1990) (sustaining the lower court's factual findings, which included the consideration of evidence from settlement negotiations, of what constituted a "reasonable" market license rate); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-73 (Fed. Cir. 2010). However, here, the agreement as to rate was reached in the context of a complete resolution of the issues now presented. Though relevant, it is not determinative as it would have been had Counsel accepted the settlement on behalf of the Plaintiff.

Given the previous approval of Counsel's rate at $300, the comparison with similar prevailing rates, Counsel's history of sanctionable conduct, and the totality of the circumstances surrounding Wright's claim and its resolution, Counsel in this

13

proceeding will be awarded attorneys' fees at the rate of $300 an hour.

## IV. The Time Records as Modified Are Approved

Counsel seeks fees for approximately 131.1 hours for litigating this matter. Given that this action participated in the limited discovery § 1983 Plan, there was no substantive motion practice, no depositions were taken, and certain of the motions were brought before the completing of a meet and confer process, Counsel's time records are excessive. The following entries will be approved as modified:

a. *"Background Research"*

Counsel billed approximately 12.7 hours researching the five named defendants, with nearly five hours spent solely on defendant Police Officer Elisha Duncan before discovery began. Although unspecified, appropriate "Googling" would consist of typing these officers names, conducting a PACER search, and possibly looking for social media pages. This research would take about one hour per Police Officer. Moreover, all PACER searches were unnecessary here as Counsel would have

14

received any responsive information in the Defendants' § 1983 Plan disclosures. Reasonable billing for this task would constitute five (5) hours at most.

b. *The May 12, 2017 Motion to Compel & For Sanctions*

Counsel seeks 32.2 hours in researching and drafting the motion to compel documents and for sanctions. This motion, comprising of eight pages, represents approximately 25% of the total billing hours. Plaintiff sought to compel 18 categories of documents and information—one of which Defendants agreed to make available for inspection, six of which had already been produced prior to the motion, another six of which Defendants already provided that they did not possess, and two of which Defendants agreed to provide. Moreover, the motion to compel certain documents—specifically the district attorney's file and one of the City's memo book entries—was made one day after Defendants produced these documents by mail and courtesy email. Only the production of the underlying disciplinary files (for which the Court reserved judgment), and personnel file performance evaluations were at issue. Ultimately, the motion for sanctions was denied.

In the end, Counsel propounded 297 document requests in what was a straightforward civil action. The specific grounds on which the Plaintiff moved, as well as the resolution of the motion establishes that the reasonable time for this task was ten (10) hours.

c. *The May 30, 2017 Motion to Compel*

Counsel attributes 7.1 hours to researching and drafting the Plaintiff's opposition to Defendants' motion to compel. Defendants' motion to compel was a global § 160.50 Release. A reasonable attorney with nine years of experience should research and draft a response within four (4) hours.

d. *Additional Discovery Work*

Despite the limited discovery under the § 1983 Plan and the relatively routine nature of the Plaintiff's claim, Counsel propounded a total of 297 document requests on Defendants. The 13.8 hours billed to these tasks will be reduced by 9.2 hours to six (6) hours because this discovery was duplicative.

*e. The June 19, 2016 Motion for Extension & to Compel*

On June 6, 2016, Counsel attributed 2.3 hours of billing to a letter motion "seeking extension of time to serve complaint on Duncan and compel production of his identifying information." There was no correspondence with the Defendants prior to drafting this motion to compel production of a valid service address for Police Officer Duncan, and the City soon thereafter agreed to provide Counsel with a valid service address. A motion for an extension of time to serve a Defendant should be routine. Time will be reduced by 50% to 1.15 hours.

*f. Actions Not Attributable to Defendant's Counsel*

Counsel also billed for various actions not attributable to either this matter or the City—0.6 hours for drafting letters to the Plaintiff regarding Counsel's firm's name change, for adding the Plaintiff to a visitor's list, and for refusing to communicate via CorrLinks; and 0.3 hours for drafting a notice of change of address, and for reviewing said notice on Electronic Case Filing ("ECF"). Per Local Civil Rule 1.3(d), Counsel was to immediately notify the Court and serve a

17

notice of change of address on Defendants in every case in which
he has appeared. Accordingly, this hour is eliminated.

g. *Clerical & Administrative Work*

Counsel charged 4.4 hours for "hand-deliver[ing]
letter to City demanding officer names," "hand-deliver[ing]
notice of deposition to individual defendants," and "hand-
deliver[ing] Plaintiff's 12/20/16 discovery supplement."
However, administrative and clerical work—such as serving and
filing papers—is not compensable as part of an award for
attorney's fees. *See Marisol A. v. Giuliani*, 111 F. Supp. 2d
381, 390-91 (S.D.N.Y. Aug. 30, 2000) (finding that clerical
services are part of overhead and are not generally charged to
clients or recoverable). These charges are stricken.

h. *Paralegal Work*

Counsel billed approximately 4.1 hours for review of
his own ECF bounces. For instance, Counsel charged the
following: "review . . . deficient pleading," "review . . .
bounce re filing of civil case cover sheet," as well as "review
. . . bounce re case designated ECF," and "review . . . bounce

18

re minute entry for initial conference." *See* ECF No. 59-1, at 2, 6. These tasks constitute paralegal work, and should be billed at a paralegal rate of $110 per hour. *See Tatum v. City of New York*, No. 06-cv-4290 (PGG)(GWG), 2010 WL 334975, at *9 (S.D.N.Y. Jan. 28, 2010) (awarding paralegal rates for attorney time spent monitoring the case's progress on ECF); *New York Youth Club v. Town of Harrison*, No. 12-CV-7534 (CS), 2016 WL 3676690, at *19 (S.D.N.Y. July 6, 2016) (applying a rate of $100 an hour to paralegal tasks).

### i. *Travel Time*

Plaintiff also billed 3.1 hours to travel time at his fully requested rate of $330 per hour. This is contrary to the "customary 50% rate for travel time" in this circuit. *Dancy v. McGinley*, 141 F. Supp. 3d 231, 243 (S.D.N.Y. 2015). The hours for travel time are reduced by half to 1.55 hours.

Accordingly, in light of the lodestar method and the foregoing analysis, a reasonable attorney would have spent 105.3 hours billing at a reasonable rate of $300 per hour, 4.1 hours billing at a reasonable paralegal rate of $110 per hour, and 3.1

19

hours billing at a 50% rate for travel time to complete the work in this case.

## V. The Attorneys' Fees Are Reduced by the Amount of the Contingency

The City argues that the Retainer Agreement between Counsel and the Plaintiff creates a conflict of interest sufficient to invalidate the Agreement. However, the City has cited no authority for this proposition. Counsel contends that the City's position is precluded by *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990), wherein the Court held that "Section 1988 itself does not interfere with the enforceability of a contingent-fee contract." In *Venegas*, the plaintiff entered into a contingent-fee contract providing that his attorney would represent him at trial for a fee of 40% of the gross amount of any recovery. *Id.* at 84. The contract gave the attorney "the right to apply for and collect any attorney fee award made by a court." *Id.* After the plaintiff obtained a judgment in his favor, his counsel moved for and was awarded fees under § 1988. *Id.* at 85. Plaintiff's counsel then requested a lien on the judgment for the fees purportedly due him under the contingent-fee agreement. *Id.* The Supreme Court held that:

20

> What a plaintiff may be bound to pay and what an
> attorney is free to collect under a fee agreement are
> not necessarily measured by the 'reasonable attorney's
> fee' that a defendant must pay pursuant to a court
> order. Section 1988 itself does not interfere with the
> enforceability of a contingent-fee contract.

*Id.* at 90.


As such, the Supreme Court appears to place the

Agreement between the Plaintiff and Counsel beyond this Court's

reach.


Even so, this Court retains discretionary authority to

modify this award as required by justice and in line with

precedent. *See Barfield v. New York City Health & Hosps. Corp.*,

537 F.3d 132, 151 (2d Cir. 2008) ("We afford a district court

considerable discretion in determining what constitutes

reasonable attorney's fees in a given case"). Courts within this

Circuit have been reluctant to award such a financial windfall

for an attorney to the detriment of the client. *See Laster v.*

*Cole*, No. 99-CV-2837 (JG), 2000 WL 863463, at *2 (E.D.N.Y. June

23, 2000) (finding "this form of double recovery unnecessary"

and reducing attorneys' fees by the amount specified in the

retainer agreement where both a fee-shifting statute and a

retainer agreement were at play); *Richards v. New York City Bd.*

*Of Educ.*, No. 83 Civ. 7621 (CBM), 1988 U.S. Dist. LEXIS 6121, at

*14-15 (S.D.N.Y. June 23, 1988) (holding that fee shifting statutes "were not designed as a form of economic relief to improve the financial lot of attorneys").

Moreover, the Second Circuit has stated that "in awarding attorney fees, the most critical factor is the degree of success obtained." *Patterson v. Balsamico*, 440 F.3d 104, 123 (2d Cir. 2006) (citing *Hensley*, 461 U.S. at 436) ("That the plaintiff is a 'prevailing party' . . . may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved."). Here, the judgment in favor of Plaintiff was in the amount of $5,001, and Counsel has submitted a fee request of $43,263.

In an exercise of discretion and supervision, the attorneys' fees as calculated above will be reduced by $1,650.33, the amount of the contingent fee under the Retainer Agreement. Should Counsel in the exercise of his discretion forego this payment of the fee by Wright, the contingent fee reduction will be vacated.

## VI.    Costs and Disbursements Are Awarded

There being no stated dispute about costs and
disbursements, Counsel is awarded those amounts requested.

## VII.    Conclusion

Counsel's motion for attorneys' fees, costs and
disbursements is granted as set forth above.

Counsel is directed to submit order on notice in
accordance with this opinion.

It is so ordered.

**New York, NY**
**October ⁊⁊ 2017**

ROBERT W. SWEET
**U.S.D.J.**

23